IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Victor Gallegos,                                          Case No. 4:08 CV 2763

                          Petitioner,                     MEMORANDUM OPINION
                                                          AND ORDER
             -vs-
                                                          JUDGE JACK ZOUHARY
J. T. Shartle,

                          Respondent.


*Pro se* Petitioner Victor Gallegos filed this Petition for a Writ of Habeas Corpus pursuant to

28 U.S.C. § 2241 (Doc. No. 1).  Gallegos is currently incarcerated at the Federal Correctional

Institution in Elkton, Ohio (F.C.I. Elkton).  He asserts Respondent violated his Fifth Amendment right

to due process, his "liberty interest under the Fourth and Fifth Amendments," and his right to equal

protection under the Fourteenth Amendment.  Gallegos seeks an order expunging an incident report

from his record and the restoration of privileges and good-time credit forfeited as a sanction for

violating several Bureau of Prisons (BOP) codes.

## BACKGROUND

Gallegos was imprisoned at F.C.I. Three Rivers, Texas on October 18, 2007 when a guard, N.

Soliz, observed two inmates walking toward the Tilden Unit carrying a large, dark bag.  The guard

ordered the inmates to approach so he could search the bag's contents.  According to the incident

report, the inmates "looked at each other and started running around to the rear of Tilden unit" (Ex.

A, 10/23/07 Incident Report).  While there is a dispute as to whether the guard observed Petitioner

tossing the bag on the roof of Tilden Unit, Petitioner does not dispute coming around the side of

Tilden Unit, out of breath, covered in mud and no longer holding the bag.  The guard reported

Petitioner "looked at [him] . . .  in a [sic] aggressive manner and kept walking" (*id.*).  The following

day, the roof of the Tilden Unit was searched, and a dark bag containing 30 unopened packs of Bugler

tobacco was discovered.

An incident report charging Gallegos with "Conduct Which Disrupts" (Code 299) and

"Refusing to Obey an Order" (Code 307) was prepared by Soliz and issued October 23, 2007.  A

copy was delivered to Petitioner the next day.  Based on the severity of the incident, the Unit

Disciplinary Committee (UDC) referred the charges to the Disciplinary Hearing Officer (DHO).  The

DHO advised Gallegos of his rights on October 30, 2007.

On November 14, 2007, Soliz prepared a revised incident report (Ex. B., 11/14/07 Incident

Report).  Soliz recited the same facts, but stated he "observe[d] Inmate Gallegos throwing an object

on top of Tilden Unit.  It appeared to be a bag." (*id.*).  He also indicated 39 packs of tobacco were

recovered from the bag, as opposed to the 30 packs originally reported.  A copy of the revised

incident report was delivered to Petitioner on November 28, 2007.

The DHO conducted a hearing on December 6, 2007.  DHO Bickle noted that the incident

report was "[o]rdered returned for a rewrite.  After completion, the report was inadvertently sent to

the Unit Team and was not located until almost two weeks later causing a delay in the delivery of the

charges to the inmate." (Ex. C., DHO Report, p. 2).  Gallegos waived his right to staff representation

and no witnesses were called.  Petitioner admitted his guilt to the DHO.  The DHO advised Gallegos

that the charge of "Conduct Which Disrupts" was changed to "Introduction of Non Hazardous

Contraband" and the charge "Failure to Follow Safety Regulations" was added.  Ultimately, the DHO

found the evidence supported a determination Petitioner committed the following prohibited acts:

"Introduction of Non Hazardous Contraband" (Code 331), "Refusing to Obey an Order" (Code 307), "Conduct Which Disrupts" (Code 317), and "Failure to Follow Safety or Sanitation Regulations" (Code 399) (Ex. C, p. 3).

Gallegos was sanctioned with disciplinary segregation, disallowance of good conduct time, forfeiture of non-vested good conduct time, and the loss of visitation, telephone, and commissary privileges. The DHO also recommended a disciplinary transfer because he believed Petitioner needed more structure and control "than is normally afforded at this institution" (Ex. C, p. 4). Some time thereafter, Petitioner was transferred to F.C.I. Elkton. Without explaining where, when, or upon what basis, Petitioner claims he "exhausted all available administrative remedies" but was denied relief each time (Doc. No. 1, p. 2).

## ANALYSIS

Petitioner asserts Respondent violated his Fourth, Fifth, and Fourteenth Amendment rights. Citing BOP policy P.S. 5270.07, Gallegos claims the staff violated policy when they failed to prepare the incident report within 24 hours of becoming aware an incident had occurred. The staff allegedly learned of the incident on October 18, 2007, but did not issue a report until almost one week later on October 23, 2007. Further, Petitioner challenges the issuance of a second report "with materially different and substantive changes" (Doc. No. 1, p. 3). He believes he faced completely different allegations after the second revised report was issued. Gallegos claims this "disadvantaged" him because, in the second report, the officer claimed to witness him tossing the bag; the UDC refused to compare the changes in the two reports; and the changes undermined the credibility of the staff (*id.* at p. 4). Petitioner adds that "[i]n denying Petitioner's appeals, the National Office admitted that reports were used during the final hearing, which were previously undisclosed to Petitioner and denied

3

him any avenue of rebuttal or credibility challenge" (*id.*).  He does not, however, explain what "undisclosed reports" were used during the hearing.

## 28 U.S.C. § 2241

The federal habeas statute provides, in relevant part: "The writ of habeas corpus shall not extend to a prisoner unless -- . . . (3) [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c).  The U.S. Supreme Court has interpreted this provision to include cases in which a prisoner loses good-time credits as a result of disciplinary proceedings.  The Supreme Court found that a habeas challenge was appropriate in such an instance because the prisoners:

> alleged that the deprivation of their good-conduct-time credits was causing or would cause them to be in illegal physical confinement, i.e., that once their conditional-release date had passed, any further detention of them in prison was unlawful; and they sought restoration of those good-time credits, which, by the time the District Court ruled on their petitions, meant their immediate release from physical custody.

*Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973).  Thus, the net effect of a loss in good-time credit is an increased period of incarceration, and the matter is properly before this Court.

### Due Process

Inmates facing disciplinary hearings are constitutionally afforded: (1) written notice of the charged violation; (2) disclosure of the evidence against them; (3) the right to confront and cross-examine witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (4) a neutral and detached hearing body; and (5) a written statement by the fact finders as to evidence relied on and reasons for any disciplinary action.  *Wolff v. McDonnell*, 418 U.S. 539, 563-72 (1974); *see also Segarra v. McDade*, 706 F.2d 1301, 1304 (4th Cir. 1983).  Additionally, there must be "some evidence" to support the disciplinary board's conclusions.  *Superintendent v. Hill*, 472

4

U.S. 445, 455 (1985). The quantity of evidence to support a disciplinary conviction is minimal and does not involve the independent assessment of witness credibility or weighing of evidence by the federal courts. *Id.* Consequently, a prison disciplinary decision should be upheld if "some evidence" in the record supports the decision. *Id*. at 455-56.

There is no dispute Gallegos received copies of both incident reports. By his own admission, "[w]hile Petitioner languished in segregation, the hearing ultimately resulted in lesser offenses in the 'moderate' category" (Doc. No. 1, p. 4). If, as he alludes, an "undisclosed report" was relied on by the DHO, Petitioner never raised any objection to this report during his hearing. Gallegos declined to call witnesses or seek representation during the hearing. The DHO explained the delay in his receipt of his incident report and, again, Gallegos received a copy prior to his scheduled hearing. No facts support any allegation Petitioner was denied the due process afforded in *Wolff*. More importantly, Gallegos admitted guilt to the charges to the DHO. Thus, he fails to explain why this Court should expunge his disciplinary record when he already admits guilt to violating BOP rules.

### Sanctions

Gallegos asserts the discipline he received was "excessive." As mentioned in his Petition, there are four categories of prohibited acts -- Greatest, High, Moderate, and Low Moderate. Petitioner's violation involved an act of Moderate severity. Specific sanctions are authorized for each category, and the imposition of a sanction requires a DHO finding that an inmate committed a prohibited act. The DHO found Petitioner violated Codes 307, 317, 331, and 399. Accordingly, the DHO was mandated to "impose **at least one** sanction A through N." 28 C.F.R. § 541.13(a)(3) (emphasis added). The DHO chose to impose separate sanctions for each Code violation. All the sanctions imposed by the DHO are included in "Table 3 -- Prohibited Acts and Disciplinary Severity

Scale."  At an absolute minimum, Gallegos was subject to forfeiture of "earned statutory good time or non-vested good conduct time up to 25% or up to 30 days, whichever is less, and/or terminat[ion] or disallow[ance of] extra good time (an extra good time or good conduct time sanction may not be suspended)." 28 C.F.R. § 541.13 (Table 3, Moderate Category, Sanction B).  Therefore, Gallegos fails to assert any basis in law to support a claim of excessive sanctions.

### Equal Protection

A prisoner cannot "make out a violation of his equal protection rights simply by showing that other inmates were treated differently." *Newell v. Brown*, 981 F.2d 880, 887 (6th Cir. 1992).  He must show that he "was victimized because of some suspect classification, which is an essential element of an equal protection claim." *Id*.  As Gallegos has not made such a showing, no cognizable equal protection claim has been stated.  *Id*.  Therefore, his unsupported equal protection claim is dismissed as conclusory.  *See Blackburn v. Fisk Univ.*, 443 F.2d 121 (6th Cir. 1971).

### CONCLUSION

Based on the foregoing, this action is dismissed pursuant to 28 U.S.C. §2243.  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

February 27, 2009

6